# THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                    No. Cr. 16-1097 JH

CORDNY HENRY,

      Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the following motions: (1) United States' Second Motion in Limine to Compel the Identification and Disclosure of Defendants' Evidence (ECF No. 100); (2) Expedited Opposed Motion of the Defendant to Compel Production of Discovery (ECF No. 112); and (3) Defendant's "Motion to Exclude, or in the Alternative, Motion for *Daubert* Hearing and to Exclude Proposed Expert Testimony" (ECF No. 88). The Court held a *Daubert* hearing on February 6, 2018. The Court, having considered the motions, briefs, evidence, applicable law, and otherwise being fully advised, will grant the United States' Second Motion in Limine, deny Defendant's expedited motion to compel, and deny Defendant's motion to exclude the testimony of the United States' expert witnesses.

**I.    Discovery Motions**

    **A.  United States' Second Motion in Limine to Compel the Identification and Disclosure of Defendants' Evidence (ECF No. 100)**

On January 29, 2018, the United States filed a second motion to compel reciprocal discovery as mandated in Rule 16 and the Court's Discovery Order. Defendant has not filed a response, which was due five working days before trial and is now overdue. The Court finds

cause to grant the Government's request for an order compelling Defendant to disclose immediately material subject to Rule 16(b)(1)(A) that the defense intends to use in its case-in-chief at trial or produce an affirmative statement saying no such material exists. *See* Fed. R. Crim. P. 16(b)(1)(A).

B. **Expedited Opposed Motion of the Defendant to Compel Production of Discovery (ECF No. 112)**

Defendant seeks under Rule 16(d)(2)(A) "any memorialized communications (emails, letters, etc.) between any member of the prosecution team and either (1) co-Defendant Juanita Williams or her lawyer; or (2) the alleged victim (M.T.), any member of her family, or any attorney representing her family." Def.'s Expedited Mot. 1, ECF No. 112. The Government opposes the request, arguing that it is overbroad, Defendant did not meet his burden of showing why the requested documents are material to the defense, and it is work product.

Rule 16(a)(1)(E) sets out the types of information that the government must disclose to the defendant, upon his request, including "papers, documents, data, photographs, … or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense…." A defendant must make a prima facie showing of materiality before he is entitled to obtain the discovery. *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *Id.* To show materiality, the evidence must bear some abstract logical relationship to the issues in the case such that pretrial disclosure would enable the defendant significantly to alter the quantum of proof in his favor. *United States v. Lloyd*, 992 F.2d 348, 350-51 (D.C. Cir. 1993). This materiality requirement is not a heavy burden; rather, evidence is material as long as there is

a strong indication that the evidence "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Id.* at 351 (internal quotations omitted). Nevertheless, ordering the production by the government of discovery without any preliminary showing of materiality is inconsistent with Rule 16. *Mandel*, 914 F.2d at 1219; *United States v. Jordan*, 316 F.3d 1215, 1250 (11th Cir. 2003) (defendant must make specific request for item together with explanation for how it will be helpful to defense).

Defendant has failed to show how the communications are material to his defense. Instead, the request is overbroad and appears to be a fishing expedition. The Government is aware of its obligations under, and has stated its intention of complying with, *Brady* and *Giglio*. Defendant has therefore not met his burden under Rule 16 to compel production of the requested communications. The Court is also not convinced that the work product privilege of Rule 16(a)(2) does not apply to the communications sought. *See* Fed. R. Crim. P. 16(a)(2) ("this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."). For the foregoing reasons, the Court will deny Defendant's Expedited Opposed Motion of the Defendant to Compel Production of Discovery (ECF No. 112).

## II. Motion to Exclude Proposed Expert Testimony

Defendant has filed a motion in limine seeking to exclude the expert testimony of Detective Kyle Woods and Dr. Shannon Wolf based on the untimeliness of the disclosure and under *Daubert*.

### A. Late Disclosure of Experts

1. **Procedural History**

In August 2016, the Court entered a scheduling order in this complex case setting a March 24, 2017 deadline for expert witness notices and reports as well as numerous other motions deadlines leading to a July 2017 trial setting. Scheduling Order, ECF No. 49. After the expert witness deadline passed, on April 7, 2017, the parties moved to continue the trial to December 2017 because of delay in receiving a Pre-Disposition Presentence Report for Defendant Henry and to give more time for the parties to review discovery and complete plea negotiations. *See* Joint Unopposed Mot. to Cont., ECF No. 58. Trial was set in December 2017, but no amended scheduling order was requested or entered. Instead, the Court's generic pretrial deadlines and instructions were attached to the Order to Continue. *See* Order, ECF No. 59. Defendant moved to continue the December 2017 trial for reasons of needing more preparation time for trial and to complete plea negotiations. *See* Joint Mot. to Cont., ECF No. 70.

On December 28, 2017, the Government filed a motion for a definite trial setting, noting that it anticipated calling two expert witnesses who may need to travel from out of state, without identifying them. Govt's Mot. 2, ECF No. 78. The Government stated in a footnote that it intended to file a notice of intent to introduce expert testimony in compliance with the Court's pretrial deadlines. *Id.* n.1 The Government noted that, although the prior scheduling order had a deadline for expert disclosure, the most recent trial setting order did not contain a dispositive motion deadline, so the Government intended to seek leave of Court prior to filing its notice. *Id.*

On January 10, 2018, the Government filed its Notice of Intent to Introduce Expert Witness Testimony Pursuant to Rules 702, 703 and 705, listing Detective Woods and Dr. Wolf as experts and setting forth their anticipated testimony (ECF No. 84). Defendant moved to exclude the witnesses because the Government filed the Notice almost 10 months after the deadline. Defendant argues he will be prejudiced because there is insufficient time to investigate

their qualifications, prepare for cross examination, and determine whether to hire rebuttal experts. Defendant states he does not waive his right to speedy trial beyond the current trial setting of February 12, 2018, and that he should not be forced to sacrifice his right to a speedy trial in order to obtain his right to be adequately prepared for trial.

    2. **Analysis**

A district court has broad discretion under Rule 16(d)(2) to impose sanctions for a party's failure to comply with a discovery order. *United States v. Wicker*, 848 F.2d 1059, 1060 (10th Cir. 1988). A court should order the least severe sanction that will accomplish prompt and full compliance with the court's discovery orders. *Id.* In determining the appropriate sanction, a district court should consider: (1) the reasons the government delayed producing the requested materials, including whether the government acted in bad faith; (2) the extent of prejudice to the defendant as a result of the delay; and (3) the feasibility of curing the prejudice with a continuance. *Id.* at 1061. A continuance is usually the more desirable remedy for the government's failure to comply with a discovery order. *Id.* at 1062. Exclusion of evidence is an "extreme" remedy. *United States v. Brown*, 592 F.3d 1088, 1090 n.4 (10th Cir. 2009).

Negligence is not bad faith; rather, there "must be willful conduct motivated by a desire to obtain a tactical advantage over the defense." *United States v. Yepa*, 572 F. App'x 577, 586 (10th Cir. July 16, 2014) (unpublished) ("*Yepa I*"). Exclusion may nonetheless be appropriate if the Government lacks any legitimate reason for the delay. *United States v. Yepa*, 608 F. App'x 672, 678 (10th Cir. June 17, 2015) ("*Yepa II*") (relying on *Wicker*, 848 F.2d at 1060-62, and *United States v. Red Elk*, 185 F. App'x 716, 723-25 (10th Cir. 2006), for proposition that negligence alone can justify excluding evidence). In this case, the Government disregarded the expert disclosure deadline without moving to extend that deadline. The prior deadline anticipated

5

the disclosures approximately four months in advance of trial, yet the Government's disclosure was only about a month from the rescheduled trial.

The Government asserts it was reasonable for it to believe the expert disclosure deadline had been vacated along with the trial dates that were extended eight, and then an additional two, months respectively. The pretrial notice set forth new deadlines for motions *in limine* and other matters, but did not address expert disclosures. There was thus nothing on the record indicating new deadlines for expert disclosures. Nevertheless, on this record the Court is not convinced the Government provided untimely notice of expert witnesses to disadvantage Defendant tactically to amount to bad faith. Although the Government's reason is not sufficient to justify the delay, it appears to amount to negligence or oversight. The first factor thus weighs only somewhat against the Government.

Turning to the prejudice prong, Defendant argues that he does not have sufficient time to investigate the qualifications of the experts, prepare cross examination, or hire rebuttal experts. While this delayed disclosure may present challenges to the defense, trial was still over a month away as of the date of disclosure. Defense counsel made no efforts to try to find its own experts. Moreover, the defense had an opportunity to cross examine both experts at the *Daubert* hearing. In *Yepa I*, the Tenth Circuit noted how its case was "distinguishable from those where we have upheld a decision to exclude evidence rather than allow a continuance," and explained that in other cases where the court excluded evidence, the jury had been selected, the trial had already begun, or a four-month continuance would have been required for a psychological examination. *See Yepa I*, 572 F. App'x at 586 (and cited cases). In comparison, here the second factor weighs minimally in Defendant's favor, given that there were 33 days until trial from the disclosure. The proposed expert testimony is about aspects of the prostitution trade based on experience and

patterns of behavior of sex trafficking victims. This type of expert testimony is not so novel or complex that the defense could not find another expert or prepare for cross examination in a month.

Turning to the third factor, the Tenth Circuit in *Yepa I* explained that if there is no bad faith, the court should clearly explain why the preferred remedy of a continuance is inappropriate. *Id.* at 586-87 (explaining that court did not make findings as to how a continuance would impair defendant's speedy trial rights, especially in light of his earlier request that case be declared complex, and that the court did not make essential findings as to necessary length of a required continuance). On remand, the district court set forth more reasons why a continuance was problematic: explaining that a necessary 4-8 week continuance would disrupt the court's schedule and the schedule of a visiting judge who agreed to try the case, would inconvenience summoned jurors, and would unfairly extend the defendant's pretrial incarceration. The Tenth Circuit concluded on appeal: "Our preference for a continuance remains, but we cannot conclude the district court exceeded its discretion by instead excluding the 911 recording." *Yepa II*, 608 F. App'x at 681. This case has been declared complex and trial has been continued previously at Defendant's request. Defendant has insisted on his speedy trial rights, but he has not indicated that he actually intends to hire rebuttal experts or how long it would take to secure that evidence.

Given the lack of bad faith, the Tenth Circuit's strong preference against exclusion, the fact that the disclosure occurred more than a month before trial, and that Defendant had an opportunity to examine the experts at a pre-trial hearing, the Court will not strike the experts for untimely disclosure.

### B. *Rule 702 and Daubert*

Defendant alternatively argues that the expert testimony would not assist the jury to

determine a fact at issue, would usurp the jury's function in determining the credibility of witnesses, is not based on sufficient methodology to be reliable, and the probative value is outweighed by the danger of unfair prejudice.

Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods, and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (2011). *See also 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006) (describing analysis as two-steps: (1) determining whether expert is qualified and (2) whether the expert's opinion is reliable under *Daubert* principles). The touchstone of admissibility under Rule 702 is helpfulness to the trier of fact. *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991).

The court should consider the following non-exhaustive and non-dispositive factors in determining whether particular expert scientific testimony is reliable: whether the expert's technique or theory can and has been tested; the theory has been subject to peer review and publication; the known or potential rate of error of the technique or theory when applied; the existence and maintenance of standards and controls; and the general acceptance of the methodology in the relevant scientific community. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149-50 (1999); *103 Investors*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94). The *Daubert* Court clarified that the focus must be solely on the principles and methodology, not

on the conclusions they generate. *Daubert*, 509 U.S. at 595. With other non-scientific experts, "the relevant reliability concerns may focus upon personal knowledge or experience." *Kumho*, 526 U.S. at 150 (emphasis added).

### 1. Detective Kyle Woods

For the reasons stated on the record at the hearing held on February 6, 2018, the Court concluded that Detective Woods is qualified by his experience and training as an expert in the area of sex trafficking and the prostitution trade and that his proffered opinions are reliable, relevant, helpful, and the product of reliable principles and methods. The Court therefore denies Defendant's motion to exclude his testimony under Rule 702 and *Daubert*. *Cf. United States v. Brinson*, 772 F.3d 1314, 1316-17, 1319-20 (10th Cir. 2014) (affirming trial court's decision to deem detective qualified as expert to testify based on his expertise about aspects of child prostitution rings unknown to many jurors); *United States v. Garza*, 566 F.3d 1194, 1196 (10th Cir. 2009) (holding that use of firearms in drug trade is proper subject for expert testimony).

### 2. Dr. Shannon Wolf

The Government seeks to admit testimony of Dr. Wolf regarding the topics set forth in the Government's Notice, including: (1) the impact sex trafficking has on victims, experiencing trauma both during and after being trafficked, becoming severely depressed and/or angry, and changes to victim's behavior following being trafficked; (2) methods of psychological control traffickers have over their victims, including the common pattern of threats/physical abuse followed by periods of seeming kindness, and then back to threats/abuse, and how they control victims even when they are not physically present; (3) the significance of threats of violence to the victim; (4) why sex trafficking victims continue to engage in commercial sex acts when they do not want to and why they have difficulty making an outcry for help; (5) how some trafficking

9

victims feel loyalty to the trafficker; (6) the concept of the trauma bond that explains why victims feel unable to leave; (7) how children are more susceptible to coercion and threats; (8) common traits of sex trafficking victims; and (9) common victim behavior and long term effects of being trafficked. *See* Notice, ECF No. 84; Am. Notice, ECF No. 126. The Government will not seek testimony from Dr. Wolf with regard to M.T. specifically. Am. Notice. 2, ECF No. 126.

Defendant argues this testimony is unhelpful to the jury, and an impermissible attempt to bolster the testimony of the alleged victim. Defendant also contends the testimony is not based on relevant empirical research. The Court disagrees and determines that Dr. Wolf is qualified and her testimony relevant and helpful under *Daubert* and Rule 702.

Dr. Wolf's testimony demonstrated she has an extensive education, including a doctorate in psychology and counseling. Of particular note, she was on the Texas Attorney General Task Force from 2012-17 for research and development of minimum standards of care for organizations providing safe homes and services for trafficked individuals; she was a Traffick911 Consultant from 2010-13 and helped develop minimal standards of care, boundaries, and safety issues when working with child victims of sex trafficking; and she has been a consultant for Homeland Security Task Force for Human Trafficking from 2013 to the present. She has presented numerous times regarding treating survivors of human trafficking and trauma bonds in trafficking. She has also conducted research into trauma bonds by interviewing an estimated 500 victims of sex trafficking, the results of which are in the process of being published. The Court finds Dr. Wolf is qualified by knowledge, skill, experience, training, and education in the area of psychology and counseling with specialized expertise in the areas of trauma, the psychology and dynamics of sex trafficking, and trauma bonds.

The Court also finds that the proposed testimony is helpful and reliable under *Daubert*

and *Kumho Tire*. Her proposed testimony is not within the knowledge base of the average jury and will assist the jury in understanding the sex trafficking trade and elements of the offense, including recruitment, threats of force, fraud, and coercion. Dr. Wolf will not be applying her knowledge to the facts of M.T. specifically, and thus, she will not be making improper credibility opinions.

Dr. Wolf's testimony is based on her extensive education, training, experience, and research regarding trauma, trauma bonds, and the psychology and dynamics of sex trafficking. Dr. Wolf has interviewed roughly 500 victims of sex trafficking, and interviewed between 50 and 70 victims of sex trafficking for her research. Her research and the concept of trauma bonds are peer-reviewed and have been published in a chapter in a trauma textbook and she is currently publishing an entire textbook on the topic. An institutional review board governs Dr. Wolf's research. The Court finds that Dr. Wolf's testimony is based on sufficient facts and data and the product of reliable principles and methods. Additionally, she has reliably applied her principles and methods and the information she has learned from her research and study to render her opinions concerning general principles of trauma and trauma bonds as well as the psychology and dynamics of the sex trafficking trade. The Court will therefore recognize Dr. Wolf as an expert under Rule 702 and *Daubert/Kumho Tire* in the area of psychology and counseling with specialized expertise in the areas of trauma, the psychology and dynamics of sex trafficking, and trauma bonds. *See* Fed. R. Evid. 702, Advisory committee notes, 2000 Amendments ("it might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case…."); *United States v. Chapman*, 839 F.3d 1232, 1234, 1236-40 (10th Cir. 2016) (holding district court did not abuse its discretion in permitting qualified expert testimony on patterns of victim behavior).

### C. Rule 403

Defendant also argues that the Government's proposed expert testimony is more prejudicial than probative and should be excluded under Rule 403. Federal Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Based on the proffered testimony and the information currently on the record, the Court finds that the probative value of the proposed expert testimony outweighs its prejudicial effect. *Cf. Chapman*, 839 F.3d at 1240 (holding district court did not abuse discretion in admitting certified nurse examiner's testimony victim's conduct in scratching herself across the chest after altercation was consistent with conduct exhibited by sexual assault and domestic abuse victims because it had significant probative value, the prejudice was not undue, and the court instructed jurors that "they were not required to accept Nurse Starr's testimony, but should treat it as any other testimony and give it only the weight jurors thought it deserved").

For all the foregoing reasons, the Court will deny Defendant's motion to exclude the expert testimony of Detective Woods and Dr. Wolf wholesale under Rule 403, Rule 702 and *Daubert*. The Court notes that this ruling does not prohibit the defense from raising relevance or other objections to specific testimony that may arise based on the evidence presented at trial.

**IT IS THEREFORE ORDERED** that:

1. The United States' Second Motion in Limine to Compel the Identification and Disclosure of Defendants' Evidence (**ECF No. 100**) is **GRANTED**. Defendant must disclose reciprocal discovery mandated in Federal Rule of Criminal Procedure 16 immediately or affirmatively produce a statement to the United States that the

material does not exist.

2. Defendant's Expedited Opposed Motion of the Defendant to Compel Production of Discovery (**ECF No. 112**) is **DENIED**.

3. Defendant's Motion to Exclude, or in the Alternative, Motion for *Daubert* Hearing and to Exclude Proposed Expert Testimony (**ECF No. 88**) is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**