THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    No. Cr. 16-1097 JH

CORDNY HENRY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

On January 29, 2018, the United States filed its First Motion in Limine to Prohibit Discussion of Applicable Penalties (ECF No. 99). Defendant responded that he does not intend to present the jury with evidence of his own sentencing exposure. Def.'s Resp. 1, ECF No. 125. Defendant, however, seeks to cross-examine co-defendant Juanita Williams on the plea deal she struck with the Government, including quantifying how much she has to gain from cooperating. *See id.* at 3-4. The Government rejects this request to quantify the benefits Ms. Williams received, contending that cross examination should only be permitted in vague terms like "significant" benefit and that discussion of the sentencing numbers is prejudicial because it would suggest to the jury what sentence Defendant might face if convicted. The Court, having considered the motion, briefs, arguments, evidence, and otherwise being fully advised, will grant the United States' motion to prohibit discussion of applicable penalties faced by Defendant and will limit cross-examination of Ms. Williams to vague terms of the substantial benefit she may receive from the plea agreement, as described herein.

I.  **BACKGROUND**

Co-Defendant Juanita Williams was initially charged with sex trafficking in violation of 18 U.S.C. § 1591(a) and (b), and aiding and abetting under 18 U.S.C. § 2, the same charge Mr. Henry faces in Count I. *Compare* Indictment, ECF No. 13, *with* Second Superseding Indictment, ECF No. 86. The initial charge carries with it a mandatory minimum term of imprisonment of 15 years. United States' Reply 2, ECF No. 135. Ms. Williams entered a cooperation plea agreement with the Government in which she pled guilty to a single count of "Accessory after the Fact," in violation of 18 U.S.C. § 3, a charge that carries no mandatory minimum. The Government agreed it would drop the sex trafficking charge. Ms. Williams has not yet been sentenced.

According to the Defendant, Ms. Williams gave statements to the United States, and following the plea agreement, Ms. Williams's version of events changed dramatically. Defendant asserts that his Sixth Amendment right to cross-examine Ms. Williams on the substantial benefits she received for the Government that create an incentive to mislead or lie to the jury. Defendant specifically requests either a stipulation or the ability to cross-examine Ms. Williams concerning the possible numeric reduction of her plea deal – from a minimum sentence of at least a 15-year incarceration and registration as a sex offender to a reduced sentencing exposure of 18 to 27 months per the guideline range. *See* Feb. 6, 2018 Hr'g Tr. 219:24-220:6. Defendant argues cross-examination of the magnitude of the break Ms. Williams received is critical to the defense.

The Government responds that the numeric evidence is of marginal relevance and is outweighed by the risk of unfair prejudice and jury nullification concerns. Furthermore, the Government asserts that there exists ample cross-examination material to demonstrate bias without the need to question Ms. Williams on the concrete numbers of her potentially reduced sentence.

## II.     LEGAL ANALYSIS

The Confrontation Clause of the Sixth Amendment guarantees a defendant the right to confront the witnesses against him, including "exposure of a witness' motivation in testifying." *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974)). Judges, however, have wide discretion to impose reasonable limits on cross-examination based on concerns including prejudice, confusion of the issues, and relevance. *Id.* at 679. In limiting cross-examination, a court must determine whether the jury had sufficient other information before it, without the excluded evidence, to analyze possible biases and motivations of the witnesses. *United States v. Gault*, 141 F.3d 1399, 1403 (10th Cir. 1998); *United States v. Chandler*, 326 F.3d 210, 219 (3d Cir. 2003) (quoting *Brown v. Powell*, 975 F.2d 1, 4 (1st Cir. 1992)); *United States v. Wright*, 866 F.3d 899, 906 (8th Cir. 2017) ("A limitation on cross-examination does not violate the Sixth Amendment unless the defendant shows that a reasonable jury might have received a significantly different impression of the witness's credibility had defense counsel been permitted to pursue his proposed line of cross-examination.") (quoting *United States v. Dunn*, 723 F.3d 919, 934 (8th Cir. 2013)). As to cross-examination of cooperating co-defendants, the critical question is whether the defendant has an opportunity to cross-examine the witness about her subjective understanding of her bargain with the government, because that understanding is what is relevant to the witness's bias. *Chandler*, 326 F.3d at 220 (quoting *United States v. Ambers*, 85 F.3d 173, 176 (4th Cir. 1996)).

The circuit courts are divided on whether a defendant may question a cooperating co-defendant about details of their potential sentences and plea agreements. *See United States v. Lanham*, 617 F.3d 873, 884 (6th Cir. 2010) (noting "circuit split" on this issue and citing cases). The courts, however, have yet to impose a categorical right to inquire into the concrete terms of a

cooperating witness's agreement with the government. *United States v. Mussare*, 405 F.3d 161, 170 (3d Cir. 2005) ("We have found no cases holding that such a categorical right exists, and we decline to so hold.").

Instead, the courts determine how much detail of a plea agreement to admit on a case-by-case basis, but with some circuits more likely to find an abuse of discretion in prohibiting concrete terms of the sentence than others. *Compare United States v. Larson*, 495 F.3d 1094, 1105 (9th Cir. 2007) ("[W]hile the Government has an interest in preventing a jury from inferring a defendant's potential sentence, any such interest is outweighed by a defendant's right to explore the bias of a cooperating witness who is facing a mandatory life sentence….The potential maximum statutory sentence that a cooperating witness *might* receive, however, is fundamentally different from the *mandatory* minimum sentence that the witness *will* receive in the absence of a motion by the Government."); *Chandler*, 326 F.3d at 223 (holding that government's interest in preventing jury from inferring defendant's possible sentence and avoiding jury nullification was outweighed by the defendant's constitutional right to confront cooperating witnesses with evidence of magnitude of benefit they received by cooperating); *United States v. Cooks*, 52 F.3d 101, 103–04 (5th Cir.1995) (district court erred when it precluded defendant from exploring effect of cooperating witness's potentially severe sentence on his motivation for testifying), *with United States v. Walley*, 567 F.3d 354, 360 (8th Cir. 2009) (holding that court did not abuse its discretion in prohibiting defense from asking cooperating witness about potential five-year mandatory minimum sentence, but permitting question whether witness faced "the possibility of a significant sentence in this case"); *United States v. Luciano-Mosquera*, 63 F.3d 1142, 1153 (1st Cir. 1995) (holding that "information about the precise number of years" witness believed he would have faced absent his cooperation with government

4

was "outweighed by the potential for prejudice by having the jury learn what penalties the defendants were facing"); *United States v. Cropp*, 127 F.3d 354, 358 (4th Cir.1997) (affirming trial court's prohibition of questions about cooperating witnesses' specific penalties at stake, including questioning as to specific sentencing guideline ranges and maximum total sentences expected).

This Court has significant concerns that inquiry into concrete numbers might result in the jury nullifying the verdict if it knew the severe sentence Mr. Henry is facing upon conviction. Inquiry into Ms. William's sentencing range implicates the same concerns because her initially indicted charge is the same as Count I against Mr. Henry. To avoid prejudicing the Government and unnecessarily confusing the jury, the Court will not permit evidence that Ms. Williams was facing the same charge as Defendant, the specific penalties at stake, or inquiry into guideline sentencing-ranges. *Cf. Cropp*, 127 F.3d at 359 ("Against whatever slight additional margin of probative information gained by quantitative questions, we must weigh the certain prejudice that would result from a sympathetic jury when it learns that its verdict of guilty will result in sentences of ten and twenty years in prison.").

The Court will permit Defendant to inquire that Ms. Williams entered into a plea agreement with the Government; in exchange for pleading guilty, the Government dropped a charge and substituted a new charge with a significantly reduced statutory sentencing range; Ms. Williams is awaiting sentencing; what Ms. Williams' understanding is concerning whether she expects to get a "significantly reduced"/ "substantially reduced" / "far less severe" sentence; whether she has received or expects to receive certain benefits in exchange for her testimony, including the withdrawal of additional charges or consideration for a substantial/significant sentence reduction. *Cf. United States v. Wilson*, 408 F. App'x 798, 802-803 (5th Cir. Nov. 15,

2010) (holding it was not abuse of discretion to curtail cross examination into concrete numbers concerning magnitude of benefit).

**IT IS THEREFORE ORDERED** that the United States' First Motion in Limine to Prohibit Discussion of Applicable Penalties (**ECF No. 99**) is **GRANTED** and cross-examination of co-Defendant Juanita Williams into the benefits of the plea agreement must be limited as described herein.

_____
**UNITED STATES DISTRICT JUDGE**