**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CORDNY HENRY,

      Petitioner,

v.                                          Civ. No. 20-10 JCH/KK
                                          Cr. No. 16-1097 JCH/KK

UNITED STATES OF AMERICA,

      Respondent.

**MAGISTRATE JUDGE'S PROPOSED
FINDINGS AND RECOMMENDED DISPOSITION**[1]

THIS MATTER is before the Court on *pro se* Petitioner Cordny Henry's Motion Under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1)

("Motion"), filed January 6, 2020.[2] Respondent the United States of America ("Government")

responded in opposition to the Motion on November 6, 2020. (Doc. 6.) To date, Mr. Henry has not

filed a reply, and the time to do so has expired. D.N.M.LR-Civ. 7.4(a). Because the Motion and

record conclusively establish that Mr. Henry is not entitled to relief, an evidentiary hearing is

unnecessary. 28 U.S.C. § 2255(b); *United States v. Flood*, 713 F.3d 1281, 1291 (10th Cir. 2013).

Having carefully considered the parties' submissions, the record, and the relevant law, the

undersigned RECOMMENDS that Mr. Henry's Motion be DENIED.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

      Mr. Henry's Motion arises out his convictions, pursuant to a guilty plea, of sex trafficking

---

[1] United States District Judge Judith C. Herrera referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B), (b)(3) and *Virginia Beach Federal Savings & Loan Association v. Wood*, 901 F.2d 849 (10th Cir. 1990), on January 7, 2021. (Doc. 8.)

[2] Because Mr. Henry is proceeding *pro se*, the Court construes his pleadings liberally but does not assume the role of his advocate. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed *pro se* is to be liberally construed[.]" (quotation marks omitted)); *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[W]e must construe [a *pro se* litigant's] arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

by means of force, threats, fraud, or coercion in violation of 18 U.S.C. § 1591, and transportation of a minor with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423. (CR Doc. 86 at 1-2[3]; CR Doc. 150 at 2; CR Doc. 197 at 1-2.) In pleading guilty to these offenses, Mr. Henry admitted that, from September 2 to September 12, 2015, he knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained Jane Doe, then 13 years old, knowing or in reckless disregard of the fact that force, threats of force, fraud, or coercion would be used to cause Ms. Doe to engage in a commercial sexual act. (CR Doc. 150 at 5.) He further admitted that he transported Ms. Doe from New Mexico to California with the intent that she engage in prostitution in California. (*Id.*)

As outlined in the Presentence Investigation Report ("PSR"),[4] beginning on September 2, 2015, Mr. Henry forced Ms. Doe to engage in commercial sexual acts and kept all the money she earned. (CR Doc. 162 at 5-7 ¶¶ 13-20, 25.) Mr. Henry's co-defendant, Juanita Williams, directed Ms. Doe regarding how she was to engage in commercial sex. (*Id.*) After about a week of trafficking Ms. Doe in Albuquerque, Mr. Henry and Ms. Williams drove Ms. Doe to California, where the trafficking continued. (*Id.* at 6 ¶¶ 17-19.) On September 12, 2015, Ms. Doe escaped and was eventually transported back to Albuquerque. (*Id.* at 6 ¶ 20.)

Mr. Henry was charged with sex trafficking by criminal complaint on March 24, 2016 and arrested on April 8, 2016. (CR Doc. 1 at 1; CR Doc. 36 at 2.) On April 11, 2016, the Court appointed attorney Kenneth Gleria to represent Mr. Henry, and on April 12, 2016, ordered Mr. Henry to be detained pending trial. (CR Docs. 7, 9.) On April 26, 2016, the Grand Jury returned

---

[3] References to "CR Doc." are to the docket in *United States v. Henry*, Cr. No. 16-1097 JCH/KK-2 (D.N.M.), the underlying criminal case.

[4] As a matter of practice, PSRs are not filed in the public record in this district; however, the undersigned has reviewed Mr. Henry's PSR, and the Government and Mr. Henry have access to it as parties to Mr. Henry's criminal case.

a Superseding Indictment charging Mr. Henry and Ms. Williams with sex trafficking in violation of 18 U.S.C. §§ 1591 and 2. (CR Doc. 20.) In the course of Mr. Henry's criminal case, the Government disclosed about 2,600 pages of discovery and dozens of audio recordings, including, on May 11, 2016, a statement by Ms. Williams. (CR Doc. 52 at 1-2; Doc. 6 at 3.) On the basis of this "voluminous evidence," the Court designated the case as "complex" on August 4, 2016. (CR Doc. 36 at 3-4; CR Doc. 48.)

On November 13, 2017, Mr. Gleria secured a plea offer from the Government to Mr. Henry, pursuant to which the Government proposed to stipulate to a sentence of 15 years' imprisonment—the statutory minimum for the crime with which he was charged—and 7 years' supervised release pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).[5] (Doc. 6 at 3; Doc. 6-1 at 1-2 ¶ 2; CR Doc. 111 at 8-9.) On December 5, 2017, Mr. Henry rejected the Government's offer and told Mr. Gleria he wanted to proceed to trial. (Doc. 6-1 at 1-2 ¶ 2; CR Doc. 111 at 8-13.)

The Court appointed Carter B. Harrison, IV to assist Mr. Gleria with trial preparation on December 13, 2017. (CR Doc. 77.) Pursuant to the Jencks Act, the Government disclosed a second statement by Ms. Williams on January 3, 2018, subject to a protective order that permitted defense counsel to show Mr. Henry the statement but not to give him a copy.[6] (Doc. 6 at 3-4.) The Government filed a notice of its intent to offer the testimony of two expert witnesses on January 10, 2018. (CR Doc. 84.)  The following day, the Grand Jury returned a Second Superseding

---

[5] Rule 11(c)(1)(C) provides that a "plea agreement may specify that an attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case." Fed. R. Crim. P. 11(c)(1)(C). "[S]uch a recommendation or request binds the court once the court accepts the plea agreement." *Id.*

[6] The Jencks Act provides that, in any federal prosecution, "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpe[o]na, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). As such, the Government disclosed Ms. Williams' statement before it was required to do so.

Indictment, charging Mr. Henry with one count of sex trafficking by means of force, threats, fraud, or coercion in violation of 18 U.S.C. §§ 1591 and 2, and one count of transportation of a minor with intent to engage in criminal sexual activity in violation 18 U.S.C. §§ 2423 and 2. (CR Doc. 86 at 1-2.)

On January 16, 2018, defense counsel filed a motion to exclude the Government's proposed expert witnesses.  (CR Doc. 88.) The Government, in turn, filed an Unopposed Motion for a *Lafler/Frye* Hearing[7] on January 22, 2018, (CR Doc. 94), and four motions in limine on January 29, 2018. (CR Docs. 99-100, 102-103.) In its Third Motion in Limine, the Government sought to exclude evidence under Federal Rule of Evidence 412, (CR Doc. 102); and, on the following day, defense counsel filed a motion for an *in camera* hearing to admit the Rule 412 evidence the Government sought to exclude.[8] (CR Doc. 107.)

 On February 1, 2018, the Court held a call of the calendar, at which it conducted the *Lafler/Frye* hearing the Government had requested. (CR Doc. 111 at 8-10.) At this hearing, the prosecutor described the terms of the Government's November 2017 plea offer, and Mr. Gleria confirmed that he had conveyed the offer to Mr. Henry and reviewed it with him in person. (*Id.* at 8-9, 11.) Mr. Henry then testified under oath that: (a) he was "satisfied that [he had] had an opportunity to fully and completely discuss the plea offer with [his] attorneys"; (b) his attorney had in fact "fully discuss[ed]" it with him; and, (c) he, Mr. Henry, chose to reject it. (*Id.* at 12-13.)

On February 5, 2018, defense counsel filed a motion to compel the Government to produce

---

[7] The Government requested a *Lafler/Frye* hearing "[s]o that a clear record will exist in the event Defendant is convicted at trial and subsequently brings a claim under 28 U.S.C. § 2255 alleging that his attorney failed to effectively convey the United States' plea offer to him," citing *Missouri v. Frye*, 566 U.S. 134 (2012) and *Lafler v. Cooper*, 566 U.S. 156 (2012). (CR Doc. 94 at 1.)

[8] The Government's three remaining motions in limine sought: 0002(1) the exclusion of evidence regarding the penalties Mr. Henry faced; (2) to compel defense disclosures; and, (3) the admission of certain evidence under Federal Rule of Evidence 404(b). (CR Docs. 99-100, 103.)

memorialized communications between the prosecution and (a) Ms. Doe, her family members, or her counsel, and (b) Ms. Williams or her counsel.[9] (CR Doc. 112.) The Court held a hearing on both sides' pretrial motions on February 6, 2018, and on February 8, 2018, issued a Memorandum Opinion and Order in which it denied defense counsel's motions to exclude the Government's expert witnesses and compel disclosure of the prosecution's communications with Ms. Doe and Ms. Williams.[10] (CR Docs. 129, 133, 134.)

Mr. Henry's trial began on February 12, 2018. (CR Docs. 146, 148.) Before jury selection, the Court informed the parties that it intended to exclude the Rule 412 evidence about which the parties had filed competing motions.[11] (CR Doc. 146 at 4-6.) After jury selection, Mr. Henry entered into a Plea Agreement ("Agreement") with the Government pursuant to Rule 11(c)(1)(C). (CR Doc. 150.) In the Agreement, Mr. Henry agreed to plead guilty to both counts of the Second Superseding Indictment and the parties stipulated to a sentence of 15 to 25 years' imprisonment followed by 10 to 20 years' supervised release. (*Id.*)

As the factual basis for his plea, Mr. Henry declared under penalty of perjury that, from September 2, 2015 to September 12, 2015,

> I, Cordny Henry did knowingly, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport, provide, obtain or maintain, by any means Jane Doe (born in 2002). I committed this offense knowingly, or in reckless disregard of the fact that means of force, threats of force, fraud, coercion, or any combination of such means would be used to cause Jane Doe to engage in a commercial sex act. I also knowingly transported Jane Doe from New Mexico to California with the intent that Jane Doe engage in prostitution in California.

---

[9] In addition to filing a number of pretrial motions, both the Government and Mr. Henry filed proposed voir dire, proposed jury instructions, and witness and exhibit lists in preparation for trial. (CR Docs. 92, 101, 104, 117-19, 123-24, 137, 140-42, 145.)

[10] The Court also granted the Government's motions in limine seeking to compel defense disclosures and exclude evidence regarding the penalties Mr. Henry faced. (CR Docs. 134, 136.)

[11] The Court also informed the parties that it intended to grant in part and reserve ruling in part on the Government's motion in limine seeking to admit certain Rule 404(b) evidence. (CR Doc. 146 at 6-8.)

(*Id.* at 5.) Mr. Henry also represented that his guilty plea was "freely and voluntarily made" and "not the result of force, threats, or promises" other than the promises in the Agreement, and he was pleading guilty because he was "in fact guilty." (*Id.* at 10.)

Mr. Gleria and Mr. Harrison signed the Plea Agreement, confirming that they had "carefully discussed every part of [it]" with Mr. Henry and fully advised him of his "rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement," as well as "the elements [of] each offense to which [he] is pleading guilty." (*Id.* at 12.) Mr. Henry also signed the agreement, confirming that he had "carefully discussed every part of this agreement with [his] attorney," that he understood and voluntarily agreed to its terms, and that his attorney had advised him of his rights, possible defenses, sentencing factors under Section 3553(a), the relevant Sentencing Guidelines provisions, and the consequences of entering into the Agreement. (*Id.*)

The Court held Mr. Henry's change of plea hearing the same day the parties entered into the Plea Agreement.[12] (CR Doc. 147.) At the hearing, Mr. Henry testified that he was not under any conditions that would impair his ability to understand the proceedings, and that he had seen, read, and understood the Second Superseding Indictment. (*Id.* at 11, 12-13.) When asked if he had gone over the elements the Government would have to prove with his attorneys, he asked for a clarification with respect to these elements, which the prosecution provided. (*Id.* at 15-16.) Mr. Henry then testified that he had no further questions about the elements of the offenses with which he was charged. (*Id.* at 16-19.)

---

[12] United States Magistrate Judge Karen B. Molzen presided over the plea hearing at its inception; however, on being advised of his right to have a United States District Judge take his plea, Mr. Henry chose to exercise that right. (CR Doc. 147 at 3-10.)

Mr. Henry testified that he understood the maximum statutory sentences he faced and his potential guideline range under the United States Sentencing Guidelines. (*Id.* at 19-24.) He also testified that he understood the terms of the Plea Agreement, no one had pressured or forced him to enter into it, and no one had made any promises other than those in the Agreement to cause him to enter into it. (*Id.* at 24-25, 36.) He specifically confirmed that he had met with his attorneys to discuss the agreement and they had answered any questions he had about it. (*Id.* at 25-26.) He further confirmed that he understood the rights he was giving up by pleading guilty and that he was "satisfied with the representation [he had] received from [his] attorneys." (*Id.* at 27-30, 36.)

At the plea hearing, the Court asked Mr. Henry if he had had "sufficient opportunity to review every aspect of [his] case with [his] attorneys," and to "talk with them, not only about the charges, not only about any possible defenses, but also about the risk of trial, as well as the benefit of the plea agreement." (*Id.* at 30-31.) Mr. Henry answered, "[y]es and no," and indicated that he had just that day learned of evidence he had not yet seen. (*Id.* at 31.) Mr. Gleria explained that this evidence consisted of a "jail call" Mr. Gleria had learned about the day before, and approximately 200 pages of potential impeachment evidence regarding Ms. Doe that he had received about a week earlier. (*Id.* at 31-32.) Mr. Gleria stated that he had "summarized" this evidence for Mr. Henry and explained to Mr. Henry how he intended to use it at trial but had not had a chance to show it to Mr. Henry. (*Id.* at 32-33.) The Court proposed to take a break and asked Mr. Henry if his questions about this evidence were "such that [he had] any hesitation about changing [his] plea here today." (*Id.* at 34.) Mr. Henry responded, "[n]o, ma'am. I'm ready to proceed." (*Id.*) After additional clarification regarding the nature of the evidence at issue, the Court again asked Mr. Henry if, despite the fact that he had not seen the evidence until that day or at all, he "still, nevertheless, want[ed] to proceed with [his] change of plea" that day, and Mr. Henry responded,

"[y]es, ma'am." (*Id.* at 35.)

Mr. Henry then pled guilty to both counts of the Second Superseding Indictment. (*Id.* at 36-37.) After reviewing the factual basis for the plea as stated in the Plea Agreement, the Court accepted Mr. Henry's plea and adjudged him guilty, but deferred acceptance of the Agreement until sentencing. (*Id.* at 37-38.) The Court specifically found that Mr. Henry was "fully competent and capable of entering into an informed plea" and "aware of the nature of the charges" and "consequences of the plea," and that his guilty plea was "knowing, voluntary" and "supported by a factual basis." (*Id.* at 37-38.)

The United States Probation Office issued its PSR on April 19, 2018, in which it calculated Mr. Henry's guideline sentence as life imprisonment followed by 5 years to life of supervised release. (CR Doc. 162 at 18-19.) Defense counsel filed objections to the PSR on August 22, 2018 and sentencing memoranda on October 15, 2018. (CR Docs. 180, 185-86.) In addition, Mr. Henry sent an *ex parte* letter to the Court regarding sentencing. (CR Doc. 179.)

The Court held Mr. Henry's sentencing hearing on January 17, 2019. (CR Doc. 202.) At the hearing, defense counsel presented the testimony of expert witness Dr. Samuel Roll and argued that the Court should sentence Mr. Henry to 15 years' imprisonment, the statutory minimum for the sex trafficking conviction and the low end of the stipulated range. (*Id.* at 5-46, 50-56.) The Government offered Ms. Doe's father's victim impact statement and argued that the Court should sentence Mr. Henry to 25 years' imprisonment, the high end of the stipulated range though below the statutory maximum of life for either conviction. (*Id.* at 47-50, 58-63.) Mr. Henry also addressed the Court, stating that he "accept[ed] full responsibility" for his actions and that "[n]obody forced [him] to do anything" or "put [him] up to it." (*Id.* at 57.) He expressed remorse to Ms. Doe and her family, acknowledged that what he did was "horribly wrong and despicable," and added, "I did it,

I did wrong. I deserve to go to jail for a long time. That is what I deserve for the things that I put these women through." (*Id.* at 57-58.)

Before pronouncing Mr. Henry's sentence, the Court outlined factors it considered in determining the sentence. (*Id.* at 64-70.) *Inter alia*, the Court observed that "this is a serious, serious, horrific crime that requires significant punishment," and, though "25 years [was] probably too high" given Mr. Henry's background and Dr. Roll's testimony, "15 years [was] not enough" in light of "the horrible situation that [he] put the victim through." (*Id.* at 69-70.) Ultimately, the Court overruled defense counsel's objections to the PSR, accepted the Plea Agreement, and sentenced Mr. Henry to 20 years' imprisonment, followed by 20 years' supervised release. (*Id.* at 70-87.) The Court entered its Judgment and Sentence on January 29, 2019. (CR Doc. 197.)

On January 6, 2020, Mr. Henry filed the Motion now before the Court, asking the Court to vacate its sentence. (Doc. 1.) The Government responded in opposition to the Motion on November 6, 2020 and filed a supplemental exhibit on November 23, 2020. (Docs. 6-7.) To date, Mr. Henry has failed to file a reply, and the time for doing so has long since expired. *See* D.N.M.LR-Civ. 7.4(a) ("A reply must be served within fourteen (14) calendar days after service of the response.").

## II.    APPLICABLE LAW

Pursuant to 28 U.S.C. § 2255, a federal prisoner who

> claim[s] the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255(a). This remedy "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, to prevail on a motion under Section 2255, the movant must show a defect in the proceedings which resulted in "a

complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

"[W]here the issues raised by [a Section 2255 motion are] conclusively determined either by the motion itself or by the files and records in the trial court," no evidentiary hearing is necessary. *Machibroda v. United States*, 368 U.S. 487, 494 (1962) (quotation marks omitted). Conversely, where "[t]he factual allegations contained in the [movant's] motion and affidavit, and put in issue by the affidavit filed with the Government's response, relate[] primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light[,]" an evidentiary hearing may be necessary. *Id.* at 494-95. However, this does not "imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be." *Id.* at 495. "District courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a petitioner's claim." *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004).

A defendant's claim that he was denied the effective assistance of counsel in violation of the Sixth Amendment is cognizable in Section 2255 proceedings. *See Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a claim of ineffective assistance of counsel, the movant must satisfy both prongs of a two-part test. *Id.* at 687.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. "If [the movant] is unable to show either 'deficient performance' or 'sufficient prejudice,' his claim of ineffective assistance necessarily fails." *Hooks v. Workman*, 606 F.3d 715, 724 (10th Cir. 2010). Courts "may address the performance and prejudice components in any

order, but need not address both if [the movant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

In the context of an ineffective assistance claim, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (quotation marks omitted). For counsel's performance to be constitutionally defective, it must have been "completely unreasonable, not merely wrong." *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997). The movant bears a "heavy" burden when claiming ineffective assistance of counsel, and to meet this burden, his "allegations must be specific and particularized, not general or conclusory." *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000); *Hatch v. Okla.*, 58 F.3d 1447, 1471 (10th Cir. 1995), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001); *United States v. Cronic*, 466 U.S. 648, 658 (1984).

## III.    ANALYSIS

In his Motion, Mr. Henry presents four grounds on which he seeks to vacate, set aside, or correct his sentence, *i.e.*, that Mr. Gleria provided him with ineffective assistance in violation of the Sixth Amendment by:  (1) "l[ying] about [his] defense strategy"; (2) failing to conduct a private investigation; (3) failing to make Ms. Williams' statements available to him; and, (4) "trick[ing him] into proceeding with trial."[13] (Doc. 1 at 4-8.) Because Grounds One and Four both rely on

---

[13] In his Motion, Mr. Henry does not name Mr. Harrison as his counsel, nor does he allege that Mr. Harrison provided him with ineffective assistance. (*See generally* Doc. 1.)

allegations that Mr. Gleria deceived Mr. Henry about his defense, the Court will address these grounds jointly.

A. *Counsel's Alleged Deception Regarding Mr. Henry's Defense*

In Grounds One and Four of his Motion, Mr. Henry asserts that Mr. Gleria provided him with ineffective assistance by deceiving him about the strength and nature of his defense. (Doc. 1 at 4, 8, 10.) More particularly, Mr. Henry claims that Mr. Gleria told him he "had a solid defense" and failed to tell him this defense depended on the success of motions the Court denied shortly before trial. (*Id.* at 4, 8.) According to Mr. Henry, Mr. Gleria's conduct was deceptive and caused him to reject the Government's November 2017 plea offer and proceed to trial, at which point the Court's denial of the motions "force[d]" him to accept a less favorable plea offer. (*Id.*) In support of these claims, Mr. Henry refers to document number 112 on the criminal docket.[14] (*Id.* at 4.)

The Government responds that Mr. Henry's claims "are unsupported and belied by the record." (Doc. 6 at 11.) In support of its position, the Government points to Mr. Gleria's affidavit, in which he attested, *inter alia*, that he advised Mr. Henry "pleading guilty was his best option" and it was Mr. Henry's decision to proceed to trial. (Doc. 6-1 at 2 ¶ 3, 6 ¶ 4 (c).) The Government also argues that Mr. Gleria's alleged conduct does "not rise to the level of a constitutionally deficient performance." (Doc. 6 at 12.) The Government further asserts that, even assuming Mr. Gleria provided Mr. Henry with constitutionally deficient representation, Mr. Henry cannot satisfy *Strickland's* prejudice prong. (*Id.*) In this regard, the Government observes that Mr. Henry "preserved the ability to argue for the term of incarceration he previously rejected" when he accepted its second plea offer, and "[n]othing in the record establishes that [Mr. Henry]…or the Court…would have accepted [its previous] offer in any event." (*Id.* at 12-13.)

---

[14] Specifically, Mr. Henry writes: "#112 on my docket sheet is everything I was told was going to be my defense I would have never [gone] to trial." (Doc. 1 at 4.)

The Sixth Amendment right to counsel "extends to the plea-bargaining process." *Lafler*, 566 U.S. at 162. Thus, "[d]uring plea negotiations defendants are entitled to the effective assistance of competent counsel," and "the two-part *Strickland*…test applies to challenges to guilty pleas based on ineffective assistance." *Id.* at 162-163 (quotation marks omitted). "With respect to the first part [of the *Strickland* test], effective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." *United States v. Carter*, 130 F.3d 1432, 1442 (10th Cir. 1997). To be constitutionally deficient, counsel's advice must be "not merely wrong," but "completely unreasonable." *Hoxsie*, 108 F.3d at 1246.

With respect to *Strickland*'s second part, "where a defendant pleads guilty to less favorable terms and claims that ineffective assistance of counsel caused him to miss out on a more favorable earlier plea offer," the movant must satisfy three criteria to show prejudice. *Missouri v. Frye*, 566 U.S. 134, 147-48 (2012). Specifically, the movant must demonstrate "a reasonable probability" that: (1) he "would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel"; (2) "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it"; and, (3) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 147. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "In determining whether [a movant has] made this showing, [courts] consider all the circumstances of the case." *United States v. Orozco-Sanchez*, 804 F. App'x 952, 961 (10th Cir. 2020) (citing *Strickland*, 466 U.S. at 695).

Regarding *Strickland*'s first prong, the Court notes that Mr. Henry's allegations in Grounds One and Four are vague, conclusory, and palpably incredible in light of the objective record. *Machibroda*, 368 U.S. at 495. For example, Mr. Henry claims that Mr. Gleria should have told

him his "solid defense" was dependent on the success of "motions," but the only motion he identifies is his counsel's motion to compel the Government to produce memorialized communications between the prosecution and Ms. Doe and Ms. Williams, respectively. (Doc. 1 at 4; *see* CR Doc. 112.) Yet, the record conclusively demonstrates that this motion was a very minor part of Mr. Gleria's defense strategy. Setting aside the numerous other defenses Mr. Gleria and co-counsel demonstrably and zealously pursued, (*see, e.g.*, CR Docs. 92, 104, 123-24), Mr. Gleria obtained hundreds of pages of prior statements and impeachment material regarding Ms. Doe and Ms. Williams independently of the motion to compel. (*See, e.g.*, CR Doc. 122; CR Doc. 147 at 31-35.) Thus, had it been successful, the motion would have produced, at most, cumulative impeachment material.

More broadly, Mr. Henry knew how the Court had ruled on his counsel's pretrial motions and was aware of the weakness of his defense by the time of his plea hearing. (*See* Doc. 147 at 27-30; Doc. 1 at 4, 8.) However, when the Court asked Mr. Henry if he was "satisfied with the representation [he had] received from [his] attorneys," he responded—under oath—that he was. (CR Doc. 147 at 36.) This testimony is fundamentally at odds with the allegations in Mr. Henry's Motion that Mr. Gleria "lied" to him and "tricked" him into going to trial. (Doc. 1 at 4, 8.) Nor does the record support an inference that Mr. Henry was unable to speak his mind at this hearing. On the contrary, Judge Herrera found that Mr. Henry was not under any conditions that would impair his ability to participate in the proceedings; and, Mr. Henry did actively participate by, *inter alia*, exercising his right to have a District Judge take his plea, requesting clarification regarding the elements of the charged offenses, and informing the Court of evidence he had not yet seen. (CR Doc. 147 at 8-9, 15-16, 30-36.)

However, even assuming Mr. Henry has alleged deficient performance in Grounds One

14

and Four with sufficient clarity, specificity, and credibility—and even assuming that Mr. Gleria's alleged performance was "not merely wrong," but "completely unreasonable," *Hoxsie*, 108 F.3d at 1246—the record conclusively establishes that Mr. Henry is not entitled to relief on these grounds because he cannot satisfy *Strickland*'s prejudice prong. *Cooks*, 165 F.3d at 1292-93. To satisfy that prong, Mr. Henry must demonstrate a reasonable probability that: (1) absent Mr. Gleria's purported deception, he would have accepted the Government's November 2017 plea offer; (2) "the plea would have been entered without…the trial court refusing to accept it"; and, (3) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 566 U.S. at 147.

With respect to the first criterion, the record precludes a reasonable probability that Mr. Henry would have accepted the Government's November 2017 plea offer had Mr. Gleria (1) refrained from telling him he had a "solid defense" and (2) told him his defense was dependent on the success of motions to be ruled on shortly before trial.[15] Initially, despite having had the opportunity to do so by way of a reply to the Government's response, Mr. Henry has not disputed Mr. Gleria's sworn statement that he advised Mr. Henry to accept the November 2017 plea offer. (Doc. 6-1 at 2 ¶ 3.) Nor has Mr. Henry disputed Mr. Gleria's sworn statement that he advised Mr. Henry he faced a life sentence if convicted at trial and the Government intended to seek a second superseding indictment if he rejected the offer. (*Id.* at 3 ¶ 4(a).) Further, at a *Lafler/Frye* hearing on February 1, 2018, Mr. Henry testified that Mr. Gleria had conveyed the November 2017 plea

---

[15] In this regard, the Court notes that Mr. Gleria could not have advised Mr. Henry that his defense depended on the success of the motion to exclude the Government's expert witnesses (CR Doc. 88) in time to convince Mr. Henry to accept the Government's initial plea offer, because Mr. Henry rejected that offer on December 5, 2017, (Doc. 6-1 at 1-2 ¶ 2; CR Doc. 111 at 8-13), while the Government did not tell Mr. Gleria of its intent to offer expert witnesses until "mid-December 2017," (CR Doc. 95 at 3), and did not give formal notice of that intent until January 10, 2018. (CR Doc. 84.) Thus, the only anticipated defense motions about which Mr. Gleria could have advised Mr. Henry were the motions to compel the Government to disclose prosecution communications and to admit Rule 412 evidence. (CR Docs. 107, 112.)

offer to him and that he, Mr. Henry, chose to reject it. (CR Doc. 111 at 12-13.) Mr. Henry also testified that, before he rejected the offer, he was "satisfied that [he] had an opportunity to fully and completely discuss [it] with [his] attorneys."[16] (*Id.* at 13.)

In sum, the record conclusively demonstrates that Mr. Gleria advised Mr. Henry to accept the November 2017 plea offer and supplied compelling reasons for doing so, but Mr. Henry nevertheless chose to reject it. In light of this record, Mr. Henry's "bald, post hoc and unsupported" assertions cannot establish a reasonable probability that he would have accepted the offer absent Mr. Gleria's alleged errors. *Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir. 2013); *cf. United States v. Watson*, 766 F.3d 1219, 1226 (10th Cir. 2014) ("[The movant] cannot demonstrate prejudice because he does not point to *any* evidence that he would have accepted a plea offer had [his attorney] discussed it with him. Instead, he merely makes two unadorned assertions that there is a reasonable probability he would have pleaded guilty[.]") (emphasis in original).

Likewise, with respect to the second *Frye* criterion, the record conclusively precludes a reasonable probability that the Court would have accepted the plea the Government offered in November 2017 had Mr. Henry agreed to it.[17] As previously noted, in its November 2017 plea offer, the Government proposed to stipulate to a sentence of 15 years' imprisonment. (Doc. 6 at 3; Doc. 6-1 at 1-2 ¶ 2; CR Doc. 111 at 8-9.) Significantly, the Court could have chosen to impose that very sentence pursuant to the Plea Agreement Mr. Henry ultimately signed, and in fact defense

---

[16] Additionally, in the *ex parte* letter Mr. Henry submitted to the Court after his plea hearing but before his sentencing, Mr. Henry stated that he considered accepting the November 2017 plea offer but was "reluctant" to enter into a plea without "all [his] options and defense[s] laid out before [him]." (CR Doc. 179 at 8.) Notably, nowhere in the letter did he allege that Mr. Gleria advised him to reject the offer or misled him regarding his defenses. (*See generally id.*)

[17] Pursuant to Federal Rule of Criminal Procedure 11(c)(3), a court may reject a plea agreement under Rule 11(c)(1)(C). Fed. R. Crim. P. 11(c)(3)(A).

counsel vigorously advocated for that outcome at sentencing. (CR Doc. 150 at 5; CR Doc. 202 at 6-47, 50-56.) Nevertheless, the Court rejected a fifteen-year sentence, stating, "this is a serious, serious, horrific crime that requires significant punishment," and "*15 years is not enough*" in light of "the horrible situation [Mr. Henry] put the victim through." (CR Doc. 202 at 69-70 (emphasis added).)

Given the Court's express rejection of the very sentence the November 2017 plea offer proposed, as well as the PSR, which indicated a guideline sentence of life imprisonment, (CR Doc. 162 at 18), Mr. Henry cannot show a reasonable probability that the Court would have accepted the plea had he agreed to the Government's November 2017 offer. *See, e.g., Lombard v. United States,* 44 F. Supp. 3d 14, 23 (D.D.C. 2014) (movant failed to show prejudice where court was unwilling "to adopt a low or mid-range sentence" at sentencing and it was therefore "not reasonably probable the [c]ourt would have endorsed the same outcome simply because it was presented by means of a binding plea agreement").

In conclusion, because Mr. Henry cannot show a reasonable probability that, absent Mr. Gleria's alleged errors, he would have agreed to the Government's November 2017 offer and the Court would have accepted the plea, he cannot satisfy *Strickland*'s prejudice prong with respect to Grounds One and Four of his Section 2255 Motion. *Frye*, 566 U.S. at 147. Without a showing of such prejudice, the claims Mr. Henry asserts on these grounds must fail. *Hooks*, 606 F.3d at 724. The Court therefore **RECOMMENDS** that Mr. Henry's request for relief on Grounds One and Four of his Motion be **DENIED**.

B. *Counsel's Alleged Failure to Investigate*

In Ground Two of his Section 2255 Motion, Mr. Henry alleges that Mr. Gleria provided him with ineffective assistance by failing to conduct a private investigation. (Doc. 1 at 5.)

Specifically, Mr. Henry claims that he saw Mr. Gleria's investigator only twice in three years, and the investigator "never investigated anything," including witnesses such as "hotel employees." (*Id.*)

The Government again responds that Mr. Henry's assertions are "unsupported and belied by the record." (Doc. 6 at 13.) In so arguing, the Government relies on Mr. Gleria's sworn statements that his investigator reviewed the Government's "extensive discovery," investigated Ms. Doe's and Ms. Williams' criminal history and background, examined Mr. Henry's e-mail and social media accounts, interviewed a motel owner, and prepared a timeline and investigative report. (*Id.* at 14-15 (citing Doc. 6-1 at 4-5 ¶ 4(b)).) The Government also maintains that, even if Mr. Henry's allegations regarding counsel's deficient investigation are accepted as true, Mr. Henry has failed to allege prejudice by asserting "either that favorable evidence exists, or what an investigation would have revealed that might have changed the outcome of the case." (*Id.* at 15.)

Under *Strickland*'s deficient-performance prong, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see also Heard*, 728 F.3d at 1179 ("A criminal defense lawyer has a duty to conduct reasonable investigations into her client's case[.]"). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Under *Strickland*'s prejudice prong, in turn, a movant must show a reasonable probability that the end result of the criminal process would have been more favorable to the movant had his counsel conducted an adequate investigation. *See United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012).

Here, with respect to the first *Strickland* prong, the Court notes that Mr. Henry's allegations

regarding Mr. Gleria's failure to investigate are again vague, conclusory, and palpably incredible. *Machibroda*, 368 U.S. at 495. In the face of Mr. Gleria's detailed description of the specific steps his investigator took to investigate Mr. Henry's case, Mr. Henry's allegation that the investigator "never investigated anything" rings hollow. (Doc. 1 at 5.)

However, even accepting this allegation as true, Mr. Henry is not entitled to relief on this ground because he has completely failed to allege prejudice under the second *Strickland* prong. As just noted, to establish *Strickland* prejudice based on defense counsel's failure to investigate, Mr. Henry must show a reasonable probability that an adequate investigation would have led to a more favorable outcome for him. *Moya*, 676 F.3d at 1214. Yet, in his Motion, Mr. Henry fails to even hint at what evidence an investigation might have uncovered, let alone explain how such evidence might have led to a more favorable result.[18] "Because of this failure to allege prejudice adequately, [Mr. Henry's] ineffective-assistance claims lack[] any colorable merit." *Id.* In short, because Mr. Henry has completely failed to allege any prejudice resulting from his counsel's failure to investigate, his claim of ineffective assistance on this basis must fail. *Moya*, 676 F.3d at 1214; *Hooks*, 606 F.3d at 724. The Court therefore **RECOMMENDS** that Mr. Henry's request for relief on Ground Two of his Motion be **DENIED**.

*C.  Counsel's Alleged Failure to Make Witness Statements Available*

Lastly, in Ground Three of his Section 2255 Motion, Mr. Henry claims that Mr. Gleria provided him with ineffective assistance by failing to make Ms. Williams' statements available to him while preparing for trial. (Doc. 1 at 7.) Mr. Henry adds that he only heard about Ms. Williams'

---

[18] For example, Mr. Henry does not allege that a private investigation would have unearthed evidence that would have caused him to accept the Government's first plea offer, nor does he allege that such an investigation would have unearthed evidence that would have caused him to reject the Government's second offer and proceed to trial with a reasonable probability of acquittal.

second statement three weeks before trial, by which time the Second Superseding Indictment had already been filed. (*Id.*)

The Government responds that Mr. Gleria's handling of Ms. Williams' statements was in no way deficient. (Doc. 6 at 15-16.) In support of its position, the Government observes that it disclosed Ms. Williams' first statement to Mr. Gleria on May 11, 2016 and her second on January 3, 2018, the latter under a protective order that prohibited Mr. Gleria from giving Mr. Henry a copy. (CR Doc. 52 at 1-2; Doc. 6 at 3, 15.) The Government further notes Mr. Gleria's sworn statement that he reviewed Ms. Williams' statements with Mr. Henry "within days" of receiving them, and advised Mr. Henry that Ms. Williams "would likely testify as a government witness after [he] learned that she had pleaded guilty to a reduced charge."[19] (Doc. 6 at 16; Doc. 6-1 at 5-6 ¶ 4(c).) In addition, the Government asserts that, even if Mr. Gleria's performance was deficient, Mr. Henry cannot demonstrate prejudice from the deficiency. (Doc. 6 at 16.)

Here again, with respect to *Strickland*'s deficient-performance prong, the Court notes that Mr. Henry's allegations regarding Ms. Williams' statements are vague, conclusory, and palpably incredible. *Machibroda*, 368 U.S. at 495. In particular, it is unclear what Mr. Henry means when he says that Mr. Gleria did not "ma[k]e [these statements] available" to him. (Doc. 1 at 7.) This vague phrasing leaves open the possibility that Mr. Gleria did, as he attested, review both statements with Mr. Henry and merely refrained from giving Mr. Henry physical copies. (Doc. 6-1 at 6 ¶ 4(c).)

Moreover, to the extent Mr. Henry means to allege that Mr. Gleria never even reviewed the statements with him, the allegation is palpably incredible. At his plea hearing, the Court asked Mr. Henry if he had had "sufficient opportunity to review every aspect of [his] case with [his]

---

[19] Ms. Williams pled guilty to being an accessory after the fact in violation of 18 U.S.C. § 3 on April 28, 2017. *United States v. Williams*, Cr. No. 16-1097 JCH-1, Docs. 63, 65 (D.N.M. filed Apr. 28, 2017).

attorneys," and Mr. Henry answered, "[y]es and no," explaining that he had not yet seen evidence brought to his attention earlier that day. (Doc. 147 at 30-31.) Notably, this evidence did *not* include either of Ms. Williams' statements, even though Mr. Henry tacitly admits in his Motion that he knew about the statements by then. (CR Doc. 147 at 30-35; Doc. 1 at 7.) It seems overwhelmingly likely that Mr. Henry would have mentioned his former co-defendant's statements at that time, if in fact he had not been able to review them.

However, even accepting Mr. Henry's allegations as true and construing them liberally, *Pinson*, 584 F.3d at 975, Mr. Henry is not entitled to relief on Ground Three because he has again failed to allege *Strickland* prejudice. *Cooks*, 165 F.3d at 1292-93. More particularly, Mr. Henry has failed to allege any facts tending to show a reasonable probability that, had Mr. Gleria made Ms. Williams' statements available to him, the outcome of the case would have been more favorable to him. *Lafler*, 566 U.S. at 163; *Moya*, 676 F.3d at 1214; *see Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (affirming the lower court's denial of evidentiary hearing because movant was "unable to demonstrate prejudice from his counsel's alleged error to provide him [police reports and witness statements].") Indeed, Mr. Henry does not even try to explain how or why the case's outcome would have been different absent Mr. Gleria's alleged errors in this regard, and the Court would be stepping into the forbidden role of Mr. Henry's advocate to speculate on these points. *Pinson*, 584 F.3d at 975.

Mr. Henry does mention, in Ground Three, that by the time he heard about Ms. Williams' second statement, the Grand Jury had already issued its Second Superseding Indictment. (Doc. 1 at 5.) Construing this observation very broadly, Mr. Henry could mean to imply that, if Mr. Gleria had made Ms. Williams' second statement available to him earlier, he would have accepted the Government's November 2017 plea offer, thereby avoiding a less advantageous plea to the Second

Superseding Indictment. However, the record conclusively demonstrates that it would have been impossible for Mr. Gleria to make Ms. Williams' second statement available to Mr. Henry in time to persuade him to accept the Government's November 2017 plea offer. Mr. Henry rejected that offer on December 5, 2017, while the Government did not disclose Ms. Williams' second statement until January 3, 2018. (Doc. 6-1 at 1-2 ¶ 2; CR Doc. 111 at 8-13; Doc. 6 at 15.)

In short, even accepting Mr. Henry's assertions regarding Ms. Williams' statements as true, he has not made any allegations that satisfy *Strickland*'s prejudice prong. *Moya*, 676 F.3d at 1214; *Lafler*, 566 U.S. at 163. Absent an adequate assertion of prejudice, Mr. Henry's ineffective assistance claim based on his counsel's alleged failure to make Ms. Williams' statements available to him must fail. *Hooks*, 606 F.3d at 724. For these reasons, the Court **RECOMMENDS** that Mr. Henry's request for relief on Ground Three of his Section 2255 Motion be **DENIED**.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that no hearing be held and that the Court **DISMISS** Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1) with prejudice.


_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**